# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

CRAIG BARNES,

    Plaintiff,

v.

ABRAHAM, INC.,

    Defendant.

Case No. 2:17-cv-279
**CHIEF JUDGE EDMUND A. SARGUS, JR.**
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on Plaintiff Craig Barnes's Motion for Default Judgment [ECF No. 24]. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.

Defendant Abraham, Inc. employed Barnes from approximately March 2013 to September 2015 at the Marathon Food Center located at 1401 Sullivant Avenue, Columbus, Ohio 43223. (Compl. ¶¶ 4–5, 9 [ECF No. 1].) Barnes stocked shelves, coolers, and pop machines; worked as Defendant's security detail; drove a company vehicle to run errands for the store, including trips to the bank and to the store to pick up food; worked in the kitchen preparing and cooking food for Defendant's customers; and cleaned and picked up trash. (Barnes Aff. ¶ 7 [ECF No. 24-1].) On Mondays, Tuesdays, and Wednesdays, Barnes worked approximately nine hours per day, from 11 a.m. to 8 p.m. (*See id.* ¶ 8.) He worked between twelve and fourteen hours per day on Thursdays and Fridays. (*Id.*) And he worked between four and six hours per day on Saturdays and Sundays. (*Id.*)

Barnes did not receive a regular paycheck from Defendant. (Barnes Aff. ¶ 9.) Rather, Defendant occasionally paid Barnes's bills and sporadically gave Barnes cash. (*Id.*) Defendant would pay approximately $35 per week on Barnes's cell phone bill and approximately $25 per week on Barnes's car maintenance bills. (*Id.*) Defendant's sporadic cash payments amounted to approximately $25 per week. (*Id.*)

Barnes filed this case against Defendant on April 7, 2017, alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the Ohio Minimum Fair Wage Standards Act (the "Ohio Wage Act"), O.R.C. ch. 4111 *et seq.*; the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15; and Article II, § 34a of the Ohio Constitution. (Compl. at 1.) Barnes served Defendant on April 21, 2017. (Proof of Service at PageID 25 [ECF No. 6].)

On May 15, 2017, and on Barnes's application, the Clerk of Courts entered default against Defendant. (First Entry of Default at 1 [ECF No. 8].) The entry of default was later vacated, however, on the joint motion of the parties. (May 31, 2017 Order at 1 [ECF No. 12].)

On August 3, 2017, the Court granted defense counsel leave to withdraw. (Aug. 3, 2017 Order at 1 [ECF No. 19].) In that same Order, the Court directed Defendant to answer Barnes's Complaint within fourteen days and to obtain new counsel because non-attorneys are not permitted to appear or maintain litigation on behalf of a corporation. (*Id.* at 1–2.) The Court explained that Defendant's failure to comply with these instructions could result in the Court entering default judgment in Barnes's favor. (*Id.*)

Fourteen days passed and Defendant did not obtain new counsel or answer the Complaint. Consequently, Barnes applied for a new entry of default, which the Clerk entered on August 23, 2017. (Second Entry of Default at 1 [ECF No. 21].) The Court held a status conference the next day. During the conference, the Court again advised Defendant that it would

2

need to obtain counsel. (Sept. 14, 2017 Order at 1 [ECF No. 22].) The Court then instructed Defendant to appear with counsel at the next status conference, set for September 29, 2017. (*Id.*)

Defendant did not appear for the September 29 status conference. (Oct. 3, 2017 Show Cause Order at 1 [ECF No. 25].) Nor did it make any effort to continue the conference. (*Id.*) Several days later, Barnes filed his Motion for Default Judgment and the Court issued a Show Cause Order. (*See id.*) The Order instructed Defendant to show cause within fourteen days why Barnes's request for default judgment should not be granted. (*Id.*) The Court cautioned Defendant that failure to comply with the Order would result in the entry of default judgment.

More than fourteen days have passed, and Defendant has not responded to the Show Cause Order. Defendant, moreover, has not obtained new counsel and has offered no response to Barnes's Motion for Default Judgment.

## II.

Federal Rule of Civil Procedure 55 "contemplates a two-step process in obtaining a default judgment against a defendant who has failed to plead or otherwise defend." *Columbus Life Ins. Co. v. Walker-Macklin*, No. 1:15-cv-535, 2016 WL 4007092, at *2 (S.D. Ohio July 25, 2016). A plaintiff must first request an entry of default from the Clerk of Courts. Fed. R. Civ. P. 55(a). Then, if the plaintiff's claim is not for "a sum certain or a sum that can be made certain by computation," the plaintiff must apply to the Court for a default judgment. Fed. R. Civ. P. 55(b).

Following the Clerk's entry of default, and on the party's application for default judgment under Rule 55(b), "'the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.'" *United States v. Parker-Billingsley*, No. 3:14-cv-307, 2015 WL 4539843, at *1 (S.D. Ohio Feb. 10, 2015) (quoting *Broad. Music, Inc. v. Pub Dayton, LLC*, No. 3:11-cv-58, 2011 WL 2118228, at *2 (S.D.

3

Ohio May 27, 2011)). "Thus, 'while liability may be shown by well-pleaded allegations, [t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Id.* (quoting *Broad. Music*, 2011 WL 2118228, at *2) (internal quotation marks omitted). A court may determine damages without holding an evidentiary hearing if the damages are "'capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" *Id.* (quoting *Wilson v. D & N Masonry, Inc.*, No. 1:12-cv-922, 2014 WL 30016, at *1 (S.D. Ohio Jan. 3, 2014)).

The Clerk has entered default against Defendant, and Barnes now requests that the Court enter default judgment. Despite numerous opportunities, Defendant has not obtained counsel or otherwise defended against Barnes's allegations. Defendant has, likewise, made no effort to respond to the Court's Show Cause Order. The Court, therefore, finds that Barnes is entitled to default judgment against Defendant. The inquiry now turns to the amount Defendant owes Barnes.

The Court first considers Barnes's request for damages relating to Defendant's failure to pay minimum wages and overtime. The Court then addresses Barnes's request for attorney fees and expenses.

### A.  **Wage and Hour Claims**

The FLSA requires covered employers to pay employees a minimum wage of $7.25 per hour and overtime compensation for hours worked over forty in a workweek at a rate of one and one-half times the employee's regular rate of pay. 29 U.S.C. §§ 206(a), 207(a)(1). A covered employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d).

4

Ohio law incorporates the FLSA's definitions, standards, and principles for its minimum wage and overtime compensation provisions. *See Fulkerson v. Yaskawa*, No. 3:13-cv-130, 2014 WL 4638982, at *5 (S.D. Ohio Sept. 16, 2014) (stating that "FLSA and [Ohio Wage Act] claims are governed by the same standards"); *see also* Ohio Const. art. II, § 34a (mandating that "[e]very employer . . . pay their employees a [minimum] wage rate" that increases yearly by the rate of inflation); O.R.C. §§ 4111.02, 4111.03 ("Every employer, as defined in [the] Ohio Constitution, shall pay each of the employer's employees at a wage rate of not less than the wage rate specified in [the] Ohio Constitution.") ("An employer shall pay an employee for overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek . . . ."). The minimum wage under Ohio law is slightly higher than it is under the FLSA. Ohio's minimum wage was $7.95 per hour in 2014 and $8.10 per hour in 2015. *Craig v. Landry's Inc.*, No. 1:16-cv-277, 2016 WL 3406032, at *1 (S.D. Ohio June 21, 2016).

Although the FLSA and Ohio law use the same standards to determine liability, the laws provide different measures of damages. Employers who violate the minimum wage and overtime compensation provisions of the FLSA are liable for unpaid wages and overtime, plus an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). If the Court finds that the employer acted in good faith, it may deny the award of liquidated damages. *Id.* § 260.

Under the Ohio Constitution's minimum wage provisions, an employer is liable for back wages and additional damages of two times the amount of the back wages. Ohio Const. art. II, § 34a. Good faith is not an exception to this award of additional damages. *See id.* Regarding unpaid overtime wages, the Ohio Wage Act permits their recovery but does not provide for liquidated damages. O.R.C. § 4111.10(A).

5

Barnes requests damages for his unpaid minimum wages under Ohio law and damages for his unpaid overtime under the FLSA. (*See* Mot. for Default J. at 13–14 [ECF No. 24].) Because he was not paid a regular wage, Barnes argues that the Court should treat his rate of pay as Ohio's minimum wage, which was higher than the federal minimum wage in 2014 and 2015. (*Id.* at 9, 12.)

Barnes also asserts a claim under the Ohio Prompt Pay Act, which mandates that an entity doing business in Ohio must, "on or before the first day of each month, pay all its employees the wages earned by them during the first half of the preceding month." O.R.C. § 4113.15(A). If wages are not paid within a set number of days (30 or 60, depending on the existence of a regularly scheduled payday), the employer is liable for six percent "of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater." *Id.* § 4113.15(B).

In support of his wage and hour claims, Barnes has submitted a declaration in which he states that he worked approximately nine hours per day on Mondays, Tuesdays, and Wednesdays, approximately twelve to fourteen hours per day on Thursdays and Fridays, and approximately four to six hours per day on Saturdays and Sundays. (Barnes Aff. ¶ 8 [ECF No. 24-1].) For this work, Barnes was only compensated approximately $85 per week. (*Id.* ¶ 9.)

Based on these approximate work hours, Barnes uses a sixty-hour workweek to calculate his damages. (Mot. for Default J. at 13–14.) He requests damages, as follows, for 39 weeks in 2014 and 36 weeks in 2015:

| Year | Weeks Worked per Year | Unpaid Minimum Wages | Ohio Minimum Wage Additional Damages | Unpaid Overtime | FLSA Liquidated Damages | OPPA Damages | Total Damages |
|---|---|---|---|---|---|---|---|
| 2014 | 39 | $15,288.00 | $30,576.00 | $3,100.50 | $3,100.50 | $917.28 | $52,982.28 |
| 2015 | 36 | $14,436.00 | $28,872.00 | $2,916.00 | $2,916.00 | $866.16 | $50,006.16 |
| | | $29,724.00 | $59,448.00 | $6,016.50 | $6,016.50 | $1,783.44 | **$102,988.44** |

Barnes calculated his unpaid minimum wages for each year by multiplying the Ohio minimum wage by sixty (the number of hours he worked each week), subtracting $85 (the compensation he received each week), and then multiplying that figure by the number of weeks he worked. (*See* Barnes Aff. ¶ 11; Mot. for Default J. at 13–14.) By multiplying his unpaid minimum wages for each year by two, Barnes calculated his additional minimum wage damages under Ohio law. (*See* Barnes Aff. ¶ 11.) Barnes calculated his unpaid overtime for each year by multiplying the Ohio minimum wage by 0.5 and then twenty (the number of overtime hours he worked each week); Barnes then multiplied that figure by the number of weeks he worked. (*See* Barnes Aff. ¶ 11; Mot. for Default J. at 13–14.) Barnes's FLSA liquidated damages are equal to his unpaid overtime. (*See* Barnes Aff. ¶ 11.) And Barnes calculated his damages under the OPPA by multiplying his unpaid minimum wages for each year by six percent. (*Id.*)

An employee bringing suit for unpaid minimum wages or unpaid overtime compensation bears the burden of proving that he performed work for which he was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946). When, however, an employer's records are inaccurate or inadequate, an employee can carry his burden "if he proves that he has in fact performed work for which he was improperly compensated and . . . produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687. The employee may satisfy this burden through estimates based on his own

7

recollection of the hours that he worked. *See Fulkerson v. Yaskawa*, No. 3:13-cv-130, 2014 WL 4638982, at *6 (S.D. Ohio Sept. 16, 2014). After the employee has satisfied his burden, the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88.

Here, Defendant's employment records are inadequate. (*See* Compl. ¶¶ 29–30 [ECF No. 1].) Consequently, Barnes can carry his burden of proving that he performed work without proper compensation by proving the amount and extent of his work as a matter of just and reasonable inference. *See Anderson*, 328 U.S. at 687. Barnes has satisfied this burden through the detailed affidavit he filed with his Motion for Default Judgment. (*See* Barnes Aff. at 1–3.) And Defendant has not disputed Barnes's estimated work hours with evidence of the precise number of hours worked by Barnes.

The Court, however, disagrees with some of Barnes's damage calculations. Through its reading of the Ohio Constitution, the Ohio Wage Act, the FLSA, and the case law applying these provisions, the Court calculates Barnes's damages as outlined below:

| Year | Weeks Worked per Year | Unpaid Minimum Wages | Ohio Minimum Wage Additional Damages | Unpaid Overtime | FLSA Liquidated Damages | OPPA Damages | Total Damages |
|---|---|---|---|---|---|---|---|
| 2014 | 39 | $9,087.00 | $18,174.00 | $9,301.50 | $9,301.50 | $545.22 | $44,771.22 |
| 2015 | 36 | $8,604.00 | $17,208.00 | $8,748.00 | $8,748.00 | $516.24 | $41,988.24 |
| | | $17,691.00 | $35,382.00 | $18,049.50 | $18,049.50 | $1,061.46 | **$90,233.46** |

The Court calculates Barnes's unpaid minimum wages for each year by multiplying the Ohio minimum wage by forty (the number of non-overtime hours Barnes worked each week), subtracting $85 (the compensation Barnes received each week), and then multiplying that figure

by the number of weeks Barnes worked. *See Heard v. Nielson*, No. 1:16-cv-1002, 2017 WL 2426683, at *4–5 (S.D. Ohio June 2, 2017) (calculating unpaid minimum wages by multiplying the Ohio minimum wage by 40—not 40 plus overtime hours); *Barnett v. E-Waste Sys., Inc.*, No. 1:14-cv-908, 2015 WL 1757302, at *5–6 (S.D. Ohio Apr. 17, 2015) (same). The Court then calculates the additional minimum wage damages under Ohio law by multiplying Barnes's unpaid minimum wage for each year by two. *See Heard*, 2017 WL 2426683, at *4–5; *Barnett*, 2015 WL 1757302, at *5–6. To calculate Barnes's unpaid overtime for each year, the Court multiplies the Ohio minimum wage by 1.5 and then twenty (the number of overtime hours Barnes worked each week); the Court then multiplies that figure by the number of weeks Barnes worked. *See Heard*, 2017 WL 2426683, at *4–5 (calculating unpaid overtime by multiplying the minimum wage by 1.5—not 0.5—and then multiplying that figure by the hours worked over forty per week); *Barnett*, 2015 WL 1757302, at *5–6 (same); *see also* 29 U.S.C. § 207(a)(1) (prohibiting workweeks over forty hours "unless [the] employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed"). Because there is no evidence to suggest that Defendant acted in good faith, the Court agrees with Barnes that he is entitled to FLSA liquidated damages equal to the amount of overtime he is owed. *See* 29 U.S.C. § 260. Finally, the Court, like Barnes, calculates the damages owed under the OPPA by multiplying Barnes's unpaid minimum wages for each year by six percent. *See Heard*, 2017 WL 2426683, at *5; *Barnett*, 2015 WL 1757302, at *6.

Based on these calculations, the Court finds with reasonable certainty that Barnes is entitled to $90,233.46 in damages. The Court need not hold an evidentiary hearing to award this

amount given the detailed nature of Barnes's supporting affidavit. *See Parker-Billingsley*, 2015 WL 4539843, at *1.

**B.  Attorney Fees and Expenses**

Barnes requests $12,246.66 in attorney fees and $415.61 in expenses incurred in the prosecution of this action through October 2, 2017. (*See* Mot. for Default J. at 15 [ECF No. 24]; DeRose Decl. ¶ 13 [ECF No. 24-6].) The FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Ohio Constitution and the Ohio Wage Act also mandate the award of reasonable attorney fees to prevailing employees. *See* Ohio Const. art. II, § 34a; O.R.C. § 4111.10(A).

The general approach to determining reasonable attorney fees is to first calculate the lodestar amount by multiplying the reasonable number of hours billed by a reasonable billing rate. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). "There is a 'strong presumption that the lodestar represents the reasonable fee.'" *Citizens Against Pollution v. Ohio Power Co.*, 484 F. Supp. 2d 800, 808 (S.D. Ohio 2007) (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)). Ultimately though, the plaintiff bears the burden of proving the reasonableness of the requested fees and expenses. *Barnett*, 2015 WL 1757302, at *7.

Barnes requests $12,246.66 in attorney fees, as detailed below:

| **Initials/Title** | **Hours** | **Rate** | **Fees** |
|---|---|---|---|
| RED (Partner) | 5.3 | $420.36/hour | $2,227.91 |
| MKT (Associate) | 35.65 | $200/hour | $7,130.00 |
| RJB (Associate) | 3.7 | $275/hour | $1,017.50 |
| LML (Law Clerk) | 6 | $115/hour | $690.00 |
| SR (Paralegal) | 11.25 | $105/hour | $1,181.25 |
| **Total** | **61.9** | | **$12,246.66** |

10

Given the length of time this case has been pending (since April 2017) and the efforts made by Plaintiff's counsel to litigate the matter despite Defendant's repeated failure to defend, 61.9 hours is a reasonable amount of time for Plaintiff's counsel to have spent on the case.

The hourly rates charged by Plaintiff's counsel are also reasonable. Attorneys who practice employment law (on the labor side) in Ohio bill at a mean rate of $313 per hour and a median rate of $288 per hour. Ohio State Bar Ass'n, *The Economics of Law Practice in Ohio in 2013*, at 40 (2013). The 75th percentile billing rate for employment law (labor side) attorneys in Ohio is $375 per hour, and the 95th percentile billing rate is $525 per hour. *Id.* The associates' (MKT and RJB) billing rates are below the mean and median rates; consequently, the Court finds their rates to be reasonable. *See id.* Robert E. DeRose's (RED) rate falls somewhere between the 75th and 95th percentile of billing rates. *See id.* Mr. DeRose's rate is high. But this Court recently approved a higher rate in a similar case. *See Heard*, 2017 WL 2426683, at *6 (approving as reasonable a rate of $450 per hour for a partner at Barkan Meizlish, LLP). And given Mr. DeRose's extensive experience and specialization in employment law, the Court concludes that his billing rate is reasonable. (*See* DeRose Decl. ¶ 10; *see also* Coffman Decl. ¶¶ 1–8 [ECF No. 24-7] (Attorney Matthew Coffman opines, based on his knowledge of (i) wage and hours cases, (ii) the rates charged by Ohio law firms in those cases, and (iii) the quality of Plaintiff's counsel's work, that the hourly rates requested by Plaintiff's counsel are reasonable.).)

The Court finds that the law clerk and paralegal billing rates (for LML and SR) are reasonable as well. In the greater Columbus area, nearly a quarter of paralegals have an hourly rate of $101 per hour or more. *See* Ohio State Bar Ass'n, *supra*, at 43. And this Court recently found rates higher than those requested here to be reasonable. *See Groth v. CenturyLink*

*Disability Plan*, No. 2:13-cv-1238, 2015 WL 1396380, at *4–5 (S.D. Ohio Mar. 25, 2015) (approving as reasonable a paralegal rate of $125 per hour and a law clerk rate of $120 per hour).

Because the requested billing rates and number of hours billed are reasonable, the lodestar amount is $12,246.66. A court can adjust the lodestar amount upward or downward based on a twelve-factor test. *Citizens Against Pollution*, 484 F. Supp. 2d at 808. Barnes, however, has not requested an upward adjustment. And the Court has not identified any circumstances warranting a downward adjustment. Accordingly, the Court finds that the requested attorney fees of $12,246.66 is reasonable and that Barnes is entitled to that amount.

Barnes also requests $415.61 in expenses; this amount consists of $0.20 spent on PACER, $15.41 spent on LexisNexis Accurint, and $400 spent on the initial filing fee. (*See* Mot. for Default J. at 15; DeRose Decl. ¶ 13.) The Court finds that these expenses were reasonable and necessary to the litigation of this action, *see Heard*, 2017 WL 2426683, at *7; *Barnett*, 2015 WL 1757302, at *8, and will, therefore, allow their recovery.

### III.

For these reasons, Barnes's Motion for Default Judgment [ECF No. 24] is **GRANTED IN PART** and **DENIED IN PART**. Barnes is entitled to **$90,233.46** in damages, **$12,246.66** in attorney fees, and **$415.61** in expenses from Defendant. The Clerk is **DIRECTED** to enter final judgment in this matter.

**IT IS SO ORDERED.**

11-28-2017
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**